Let me call the prior case. Again, case number 22-1124, Garcia v. Posewitz and others. Okay, looks like we have everyone here. So we'll hear first from Mr. Marsh. Thank you. Good morning, your honors. May it please the court. My name is Jordan Marsh. I represent the appellant, Jose Garcia. This case presents a fairly straightforward inquiry. Is there evidence in the record from which a reasonable jury can conclude that one or more of the information material to probable cause from the warrant-issuing judge? In this case, we submit that the answer is yes and that it's undisputed. Rick Spension, who was the assistant district attorney, appellee Rick Spension, who primarily drafted what's called in Wisconsin a criminal complaint, which serves as the warrant affidavit, testified that he omitted what he acknowledged were material, exculpatory inconsistencies relative to the alleged victim's multiple statements of what happened. And he testified, even more importantly, that he omitted these inconsistencies in order to obtain an arrest warrant. Now, it's clear, as of at least 2019, that an officer who swears that presented facts support probable cause when he knows that suppressed facts destroy it does not act truthfully. He therefore violates the warrant clause, which surely takes the affiant's good faith as its premise. And that's Rainsberger. If, in fact, the appellees knowingly withheld from the magistrate, or from the court commissioner in this case, who issued the warrant, that they knowingly withheld material information, not only have they violated the Fourth Amendment, but they are not entitled to qualified But the fact that the district attorney later on, the very specific facts that were omitted from the complaint, from the warrant application, were also the same reasons articulated by the district attorney's office when it decided to dismiss all the charges against Jose, even after they had taken him to trial. And the trial ended initially in a mistrial, based on appellee Hoffman's statements to the jury. What the district attorney said when explaining the actual motion to dismiss stated that after reviewing the file, the state will not be able to meet its burden of proof, and does not have sufficient credible evidence to go forward on the case. Mr. Marsh, we have here an officer relying on a call that came in from the mother of the minor victim describing an incident, and then an interview of a minor First, he personally interviewed the victim, and learned from the victim that she is now telling a completely different story than the story she told to her mother. And again, this is a question of whether... Completely different? And we're dealing with a minor here. Correct. So, to say completely different, in terms of the number of times in sequence that he touched her, it seems like a stretch. So, I can go over that for you. Specifically, what Monique, the mother, stated in her August 23rd phone call to the police, was that her daughter told her that in the middle of a crowded swimming pool, Jose approached her, put her on his lap, and rubbed her breasts and vaginal area. And then, after that one time, Jose later on approached her in the pool and asked her, did you like it? And she said no, and she exited the pool. Two days later, the minor, the alleged victim, in her statement to Detective Kozowitz, stated, told what I submit was a fundamentally different story, which is that Jose pulls her onto his lap, rubs her breasts for approximately two minutes in the crowded swimming pool, and then sees one of the other kids coming and throws her into the water, which he had been doing before, he's throwing the kids in the water. And then, ten minutes later, he asks her to come on his lap again. She comes on his lap again, and after which he proceeds to rub her vaginal area for another two minutes, and then she tells him, to extricate herself from the situation, she fakes as if she has to go to the bathroom, and she gets up and she leaves. And she exits the pool. Now, these are just two of the issues involved, but to me, oh, and by the way, I forgot one thing, she affirmatively told her mother, Jose, Mr. Garcia only touched me one time inappropriately, but I'm still uncomfortable around him. I think that, not only do I think that those are material, but Rick's suspension, specifically, and this is, I think, the crux of the issue. Rick's suspension's actions in omitting that information specifically to ensure or get a better shot and a probable cause determination makes those inconsistencies definitionally relevant and definitionally material, at least at a minimum, so that a jury should be able to decide that issue. But, I mean, I think it's in, you don't see a lot of cases where the prosecutor who drafts the complaint and the warrant application tells, under oath, testifies that I omitted material, exculpatory information in order to obtain a probable cause finding. I mean, it's just, you don't often see that as clear as it is here. Second, there is video evidence that there is clearly abundant evidence in the record that the surveillance video contradicted the allegations of the alleged victim. And so, when a detective swears to a warrant application and when a prosecutor drafts a warrant application that deliberately omits any reference that there was surveillance video, they have manipulated the system in such a way that not only does it violate the Fourth Amendment, but it very clearly does not entitle them to qualified immunity. It's clear. Reinsberger is clear. Olson is clear. If you knowingly withhold from the magistrate, from the warrant issuing judge, material information, you are not entitled to qualified immunity because a reasonable officer would know you can't do that. Do you have the citation reference to the testimony you're referring to from spent gin? Because I don't have a recollection that the testimony is as direct as I knowingly and intentionally violated the constitutional rights of the victim. Sure. Give me a second. Yeah, but you have the quote. I don't have the quote. So, for his part, and I'm just reading from the opening brief, spent gin agreed there was a, quote, material inconsistency. Where are you looking? I'm looking at page 22 of the opening brief. The blue brief? But I think it's blue. Yeah. But I can refer you to the deposition page, and that's page 221, lines 2 through 6. He even agreed this inconsistency was, quote, somewhat exculpatory, unquote. Yeah, but then you say at the bottom of 22, in other words, spent gin intentionally omitted information that he agreed. I'm just not, I don't have a recollection of that testimony being, I thought spent gin said that the upshot of that was in hindsight. Well, he certainly didn't say that last part, but here's what he said. He didn't say I violated a constitutional right, that Jose's constitutional rights. I'm sorry, not the victim, the accused. Yeah. But this is what he says. And again, these are partial quotes, but it says the idea behind omitting those inconsistencies, quote, was to support probable cause for a charge that I felt was overall supported by the facts of the case, unquote. And that's spent gin's deposition at 271. Yeah, but you don't have quoted idea behind omitting these inconsistencies. That's what I'm trying to focus on. What you said is pretty stark. It is. I can pull it up on my laptop. Well, you'll be back for rebuttal. Okay, sure. Do you have any other points you want to make in your affirmative presentation? Well, I'll reserve. We'll give you some rebuttal time. Thank you. You're welcome. Thank you. Okay, Mr. Patterson, good morning. Good morning.  Patterson representing ADA, Rick Sponson and Linda Hoffman. As the appellant left off, in fact, Mr. ADA Sponson said that he took the facts and put them in the complaint to support probable cause because he believed the facts overall supported probable cause for an arrest warrant on the basis that Mr. Garcia had sexually assaulted the minor victim. And what is important in terms of probable cause determination is that the facts support that there is probable cause that the criminal act occurred. It does not need to support – there does not need to be sufficient facts to support a beyond a reasonable doubt standard. And as a result, at this stage, the fact that all three witnesses underlying their testimony provide testimony that indicates that the victim was in fact assaulted, although they may differ in terms of – All three witnesses? Sorry, all two witnesses. Three accounts. Two witnesses, three accounts. So which – And the interview with the minor victim's mother. Can we consider the interview of the minor's mother if it did not take place before they went to get the arrest warrant? No, I don't believe that that is in fact relevant to this case. That's why I'm – because you said we can rely on that and that that testimony is part of what shows the probable cause here. But I agree. I'm not sure we can rely on it for establishing probable cause. True, true. So just focusing on the minor victim's testimony from both accounts. So you have – what the officers obtained before they went and got the arrest warrant was the statement from the victim. And they also had the mother's initial call to the police department. Yes. They also – Mr. – Officer Posowitz had reviewed some video footage which he had determined was not exculpatory because the cameras were in fact far away from the incident in question and the footage was grainy. And so he was not able to actually determine who was who in the video footage and precisely the event in question. And there's only one interview of the minor victim before they go and get the arrest warrant, correct? Yes, correct. But again, I think that second interview comes after they've already obtained the arrest warrant. Yes, correct, correct. And so – So focus in on then, please, what was known to the officers and the state attorneys – state's attorneys at the time that the probable cause warrant. Yes, Your Honor. At the time of the probable cause determination, what was known to Officer Posowitz and ADA Sponchen and Hoffman was that they had a minor victim who alleged having been touched by Mr. Garcia in both her vaginal area and her breast. They knew that their – this victim was credible. They'd made that determination on the basis that the minor victim had known Mr. Garcia her entire life. Their families had been friends of over 25 years, which is multiple times over her lifetime. And that the victim had explained in detail what had happened to her and the impact which had happened to her. And given the severity of the accusation and what was known to Officer Posowitz and ADA Sponchen and Hoffman at the time in terms of the credibility of the witness, these facts were sufficient to support probable cause and to draft the complaint. What about the inconsistencies that have been pointed out between what the mother said when she called the police department and what the victim said when she was initially interviewed? Absolutely, Your Honor. I think that one of the key pieces to this case is that the minor victim is the only witness who was a direct witness to the event in question. And so in reviewing this case, I mean reviewing this case in terms of recharging it, ADA Sponchen had to weigh the minor victim's testimony above that of her mother's initial contact with the police. Because in order to support probable cause, the facts in question to support that determination needed to be authenticated by a witness to the event. And the minor victim was the only witness to the event. And in terms of following inconsistencies that the appellant points to to question the credibility of the witnesses, that is something that goes toward questions which would arise in trial on the basis of whether or not there's enough evidence to support beyond a reasonable doubt. Not probable cause at the time that the arrest warrant and the complaint were drafted. Why, if those inconsistencies are sufficient enough to really call into question the victim's account? I don't, I do not believe that those inconsistencies are sufficient to actually call into, to really call into question the witness's account. I believe that Mr. Sponchen, he said in his testimony that these facts were somewhat exculpatory, meaning that those facts are facts which would be relevant to the defenses that Mr. Garcia would raise. But that doesn't necessarily mean that those facts undermine the underlying charge that he sexually assaulted, that he allegedly sexually assaulted the victim in this case. And so in terms of at the probable cause stage, just based on what was known at the time, it was enough for Mr. ADA Sponchen to draft the complaint and move forward with the case. Which of the alleged inconsistencies did ADA Sponchen know of? What alleged inconsistencies did he know of? The differences in timing between the minor victim's first account and her second account. Specifically, the fact that the specificity of some of the details of her sexual, her narrative of her alleged sexual assault, being that in her first interview she had communicated that both the touching of her vaginal area and her breasts had occurred back to back. He later became aware that she testified, gave testimony to the officer Posowitz that this occurred with about two minute intervals. I mean given that this is a minor victim who has allegedly gone through a significant trauma, a differentiation of narrative in terms of timing is not necessarily unexpected. And the underlying facts of her testimony remain the same. And so that goes to why he said that the details, that these facts were somewhat of a sculpture. Not necessarily that they were facts which undermine the entirety of the case and blew up a probable cause determination as the appellant suggests. If there are no further questions. Okay, very well. We'll hear from Mr. Bitar. Thank you. May it please the court, Ramsey Bitar on behalf of Sean Posowitz and the village of Lake Dalton. I want to begin with a concession and plaintiff's reply brief at page three. Quote, the issue here is not whether Posowitz should have continued to investigate after he obtained probable cause. Close quote. Plaintiff's case is really about whether officer Posowitz should have included more information about potential inconsistencies. But the problem with that, there's no case law that supports it. When you look at the line of authority that's cited in our brief, none of which plaintiff ever addresses, Tangwell, Spiegel, Hopper, Easton, Forrest, Dempsey, Hawkins, and Mutter. Six of those involve matters of sexual assault and sexual misconduct. Very difficult cases. Oftentimes he said, she said. Only Tangwell and Spiegel, which really set the standards in our circuit for ringing the bell of probable cause, do not involve sexual assault but apply with full force here and set the general rule from Tangwell. When an officer has received his information from some person, normally the putative victim or an eyewitness, who it seems reasonable to believe is telling the truth, he has probable cause. The probable cause bell has been rung. And in every one of those other six cases dealing with some actions of sexual misconduct or sexual assault, some of which involve mothers reporting it, such as the Hopper case, which is actually one of Judge Gorsuch's decision from the Tenth Circuit in 2016, where he relied on another Tenth Circuit case involving sexual misconduct called Easton, you're always going to have inconsistencies. Every single one of those cases has some type of inconsistencies, contradictions, questions, allegations of faulty investigations, alleged omissions from the probable cause affidavit. And not one of those cases has been addressed by the plaintiff in this case. They want a different rule. They want a rule that a police officer needs to act with absolute precision and perfection. The problem is no case law told Officer Posowitz to hand over his materials to the prosecutor, which is what he did. He handed over every report, every summary, every piece of video. It was the prosecutors here who made the probable cause decisions and drafted the warrant, which in turn, per Statute 968.04 sub 1, led to the issuance of the arrest warrant. But no settled case law told Officer Posowitz that he needed to include more information in his reporting, that he needed to create some kind of chart of inconsistencies and reconcile things out. That is just not the law in this circuit at all, not even close. And frankly, Mr. Garcia knows that. He's a Chicago police officer. He knows when he does his work for 25 plus years, perfection is not required. The sifting and winnowing process between credibility and almost everything they raise goes to matters of great cross-examination at a criminal trial. But it doesn't address the probable cause inquiry, which was satisfied in this case. So for the reasons I see my time is up for the reasons that the district court filed in its decision, I think should be upheld in the summary judgment in this decision. I should be upheld by this court. Thank you very much. Thanks, Mr. Vitar. Mr. Marsh, we'll give you two minutes on on rebuttal. Thank you, Your Honor. You're welcome. Referring to our last discussion, if you look at page 271 of Spension's deposition, starting at line 14, as we have discussed, there are several – this is the question – as we have discussed, there are several inconsistent facts that you reviewed before filing, before drafting the complaint, correct? Correct. Question, but you omitted those inconsistent facts to create a document that read consistently, correct? Answer, correct. Question, and the idea behind that was to obtain a probable cause finding and obtain an arrest warrant, right? Answer, the idea behind it was to support a probable cause – to support probable cause for a charge, which I felt was overall supported by the facts of the case. So to my reading, that is clear, and that's what we have. And, you know, the fact of the matter is counsel cited cases that involved inconsistencies, and a lot of cases do involve inconsistencies. But I submit that very few, if any, other cases involve inconsistencies so fundamental that the prosecutor actually admits to omitting those inconsistencies in order to obtain a probable cause finding. And that specific intent, that kind of but for, is I think instructive here, and I think is compelling evidence from which a jury could easily find that and agree with Mr. Spencer that they were material, that they were exculpatory, and that they were omitted specifically to obtain a probable cause finding. That's what he said. We also know that the case was dismissed for the same reasons that were omitted from the complaint because of the inconsistencies and also because the video, according to DA Calkins as well as Mr. Spencer, and by the way, Pazowitz even agreed with the dismissal of charges, that the video didn't match up with her allegations. So we've got really incredible evidence of this by the defendants themselves. You just don't have that in a lot of cases, and I think it's clear that a jury could find based on that, in fact, that what Mr. Spencer said was true. And thank you. I appreciate your time. You're welcome. Mr. Marsh, thanks to you. Mr. Patterson, Mr. Vitar, we'll take the case under advisement. That concludes this morning's argument.